**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN**

---

MICHELLE RZANCA, as Personal Representative for the ESTATE OF JORDAN D. FIELD,

    Plaintiff, individually and on behalf of all similarly situated persons,

-vs-

COREWELL HEALTH, a Michigan corporation, and DCM SERVICES, LLC, a Delaware company,

    Defendants.

Case No.  1:26-cv-11692

HON.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

_____ /

---

Robert J. Buchanan (P42006)
BUCHANAN FIRM
452 Ada Dr. SE, Suite 300
Ada, MI 49301
(616) 458-2464
rjb@buchananfirm.com
CLASS COUNSEL FOR PLAINTIFF CLASS MEMBERS

_____ /

**CLASS ACTION COMPLAINT**

Plaintiff, Michelle Rzanca as Personal Representative for the Estate of Jordan Field, on behalf of all others similarly situated, through attorneys, Buchanan Firm, states:

**INTRODUCTION**

1. This class action arises from Defendants' routine and systematic practice of asserting and, in many cases, collecting medical debts that are not legally owed.

2. After providing medical services to emergency patients, Defendant Corewell Health submits claims for payment to insurers, group health plans, Medicare, or Medicaid and

accepts reduced payments under negotiated agreements and governing law as payment in full for covered services. Those agreements and reimbursement rules legally limit and restrict Defendant Corewell Health's recovery amount to the negotiated or legally permitted rates. After accepting payment, Defendant Corewell Health cannot bill, charge, collect from, seek compensation, remuneration or reimbursement from, or have any recourse against the patient for covered medical services. See e.g., payment contracts, managed care contracts, Medicare (42 U.S.C. § 1395cc(a)(1)(A)), Medicaid (42 C.F.R. § 447.15, 42 C.F.R. § 438.106(b), 42 U.S.C. § 1396a(a)(25)(C), and 42 U.S.C. § 1396u-2(b)(6)), the federal No Surprises Act (45 C.F.R. § 149.410 and 42 U.S.C. §§ 300gg-111), the Michigan No Surprise Billing Act (Mich. Comp. Laws §§ 333.24501 – 333.24517), the Patient Protection and Affordable Care Act (42 U.S.C. §§ 18001 et seq.), the federal Deficit Reduction Act of 2005 (42 U.S.C. §§ 1396u-2(b)(2)(D)), etc.

3. Despite accepting those payments and adjustments for covered services, Defendant Corewell Health, in many instances, continues to treat the difference between its "standard charges" (or chargemaster rates) and the lower amounts reimbursed by insurers, Medicare, or Medicaid as an "outstanding balance," and unlawfully seeks to collect that difference from patients, deceased patients' estates, and guarantors.

4. The practice is commonly known as **balance billing**.

5. These post-payment demands of Corewell Health are false, misleading, void, and otherwise unlawful to the extent they misrepresent the amount and legal status of alleged debts or seek recovery of amounts that are not collectible under applicable law, contractual arrangements, or reimbursement limitations. See e.g., Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust, 410 F.3d 304 (6th Cir. 2005)(hospital's balance billing claim against tort settlement was "prohibited" by state and federal law).

6.      The conduct alleged is not isolated but instead reflects a billing and collection practice used by Defendant Corewell Health facilities to large numbers of patients. For instance, on information and belief, the practice is used in circumstances where a patient or a deceased patient's estate has asserted or may assert a claim against a tortfeasor allegedly responsible for the patient's injuries.

7.      On information and belief, Defendant Corewell Health facilities employing this unlawful practice include Corewell Health Beaumont Grosse Pointe Hospital, Corewell Health Dearborn Hospital, Corewell Health Wayne Hospital, Corewell Health Taylor Hospital, Corewell Health Trenton Hospital, Corewell Health Farmington Hills Hospital, Corewell Health in Southeast Michigan, Corewell Health Pharmacy, Corewell Health William Beaumont University Hospital, Corewell Health Beaumont Troy Hospital, Corewell Health Big Rapids Hospital, Corewell Health Continuing Care Hospital, Corewell Health Gerber Memorial Hospital, Corewell Health Ludington Hospital, Corewell Health Pennock Hospital, Corewell Health Reed City Hospital, Corewell Health Grand Rapids Hospitals (Butterworth Hospital, Blodgett Hospital, Helen DeVos Children's Hospital), Corewell Health Lakeland Hospitals (St. Joseph Hospital, Niles Hospital, Watervliet Hospital), and Corewell Health Zeeland Hospital.

8.      Defendant Corewell Health routinely refers alleged patient balances to debt collection agencies, including Defendant DCM Services and United Collection Bureau, Inc., for collection.

9.      Defendant DCM Services, acting as a debt collector and working with Defendant Corewell Health, then attempts to collect those alleged balances from patients, deceased patients' estates, and guarantors.

10.      Plaintiff brings this lawsuit to recover money improperly obtained by Defendants from patients, deceased patients' estates, and guarantors through unlawful billing and collection

practices, to recover damages under the federal Fair Debt Collection Practices Act and similar state laws, and to obtain declaratory and injunctive relief.

## JURISDICTION AND VENUE

11.     This Court has federal question jurisdiction under 28 U.S.C. §1331 because Plaintiff asserts claims under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq.

12.     This Court also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d), because the proposed class exceeds 100 members, the aggregate amount in controversy exceeds $5,000,000, and minimal diversity exists.

13.     The Court has supplemental jurisdiction over state law claims under 28 U.S.C. §1367.

14.     Venue is proper in this District under 28 U.S.C. §1391 because Defendant Corewell Health conducts business here.

## PARTIES

15.     Plaintiff, Michelle Rzanca as Personal Representative for the Estate of Jordan Field, brings this action on behalf of the estate of a deceased patient and other similarly situated patients of Defendant Corewell Health ("**Plaintiff class members**").

16.     Jordan Field, a Michigan resident, received medical services as an emergency patient of Corewell Health Butterworth Hospital in Grand Rapids, Michigan in March 2024. He died in the hospital from his injuries.

17.     Jordan Field was a "consumer" as the term is defined by 15 U.S.C. § 1692a(3) and M.C.L. § 339.901(f).

18.     Defendant Corewell Health billed $61,609.62 for the medical services provided to Jordan Field.

4

19. Defendant Corewell received $19,448.92 from Jordan Field's health insurer, Blue Cross Blue Shield PPO, under a payment contract, as payment and full satisfaction of the medical services.

20. Despite having received payment in satisfaction and contrary to applicable reimbursement limits under the law, Defendant Corewell Health claimed that the Field Estate still owed it a debt of $42,160.70 for the unpaid balance. The debt was fake.

21. Defendant Corewell referred this fake debt to Defendant DCM Services for collection from the Field Estate.

22. Defendant DCM Services, acting as a debt collector, has sent written communications representing that $42,160.70 is owed by the Field Estate.

23. The Field Estate has been subjected to collection demands by Defendants for amounts that are fake and not legally owed.

24. Defendant Corewell Health ("**Defendant Corewell**") is a Michigan corporation operating hospitals and medical facilities throughout Michigan.

25. Defendant DCM Services LLC ("**Defendant DCM**") is a Delaware company and a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

26. Defendant DCM regularly attempts to collect alleged debts for Defendant Corewell.

**FACTUAL ALLEGATIONS**

27. Defendant Corewell participates in agreements with insurers and group health plans and participates in the Medicare and Medicaid reimbursement systems, which establish reimbursement rates for covered medical services.

28. When Defendant Corewell submits claims for reimbursement of medical services, insurers, group health plans, and government payors issue payments at negotiated or statutory

rates, and Defendant Corewell applies contractual or government adjustments to reduce billed charges.

29. The adjustments are not temporary reductions to billed charges. They are binding limits that restrict amounts recoverable from patients under applicable agreements and law.

30. Once those payments and adjustments are applied to the billed charges, any financial responsibility of the patient, the patient's estate, or guarantor is satisfied for the covered services.

31. Defendant Corewell routinely treats the difference between its standard charges (chargemaster rates) and lower reimbursement amounts as an "outstanding balance" and seeks to recover that difference directly from patients, deceased patients' estates, and guarantors.

### DEFENDANTS' ACTS TO COLLECT FAKE DEBT
### FROM THE ESTATE OF JORDAN FIELD

32. Defendant Corewell provided emergency medical services to Jordan Field at Corewell Health Butterworth Hospital in Grand Rapids from March 18 to 21, 2024. He arrived by ambulance following a respiratory arrest during a sedation procedure at an oral surgery office and sustained anoxic brain injury. Defendant Corewell admitted him to the intensive care unit and he died in the hospital from his injuries three days later.

33. Defendant Corewell had a payment contract with Jordan Field's health insurer, Blue Cross Blue Shield PPO (BCBS). The contract set negotiated payment rates for covered medical services and most were lower than Defendant Corewell's "standard fees" (or chargemaster rates) for such services. BCBS payment of the contract rates was full satisfaction ("payment in full") for the medical services and the patient owed nothing.

34. Under the contract, aside from the insured's deductible, BCBS assumed sole financial liability to Defendant Corewell for payment of covered medical services.

BUCHANAN FIRM

6

35.     The contract prohibited Defendant Corewell from holding a BCBS-insured patient liable for any payment or fees that were the legal obligation of BCBS. Defendant Corewell could not bill, charge, collect from, seek compensation, remuneration or reimbursement from, or have any recourse against an insured patient for a covered medical service.

36.     Following the 2024 hospitalization, Defendant Corewell billed $61,609.62 for the emergency medical services to Jordan Field and accepted $19,448.92 from BCBS under the contract as payment in full.

37.     In July 2024, the Estate began a wrongful-death, medical-malpractice claim against the oral surgery office.

38.     Corewell Health learned of the Field Estate's wrongful death claim.

39.     Notwithstanding its receipt of payment in full from BCBS, Defendant Corewell asserted that the Field Estate owed a $42,160.70 debt for the alleged unpaid balance.

40.     In a letter dated October 30, 2024 and received by the Field Estate, Defendant Corewell falsely represented that the deceased patient owed a "hospital balance" of $42,160.70. (**Exhibit 1**). "**The balance is your responsibility**."

41.     Defendant Corewell referred the alleged balance of $42,160.70 to Defendant DCM for debt collection from the Field Estate.

42.     In a letter dated November 1, 2024 and received by the Field Estate, Defendant DCM identified itself as "**a debt collector**" and stated it was "**trying to collect a debt due from the assets of the estate**." Defendant DCM falsely represented that the deceased patient's estate owed a debt of $42,160.70 to Defendant Corewell. (**Exhibit 2**). An "Itemization of the Debt" reflected that Defendant Corewell had already been paid $19,448.92 for the medical services.

43.     Defendant Corewell and Defendant DCM have continued demanding that the Field Estate pay fake debt.

7

44.     In a letter dated July 22, 2025 and received by the Field Estate, Defendant Corewell provided a detailed listing of debt that "Jordan Daniel Field (Guarantor #101930383) **is responsible for**." It included detailed itemizations of the emergency medical services, payments it had already received from insurance (after "contractual adjustment"), and falsely represented that the patient's estate owed it a debt of $42,666.47. (**Exhibit 3**). The debt was fake.

45.     In a letter dated October 24, 2025 and received by the Field Estate, Defendant Corewell reminded the Estate of its alleged "**outstanding balance**" and stated that the debt had been turned over to the "**debt collection agency**" Defendant DCM for collection. (**Exhibit 4**).

46.     In a letter dated April 8, 2026 and received by Plaintiff's attorneys, Defendant DCM falsely represented that the Field Estate owed a debt of $42,666.47. The debt collector stated that "**we are seeking payment from assets of the decedent's estate**" and provided three payment options. (**Exhibit 5**).

47.     Defendants' communications with the Field Estate since July 2024 have misrepresented the amount, existence, and legal status of the fake debt and demanded payment.

48.     Defendant Corewell engages in similar billing and collection practices against other patients, deceased patients' estates, and guarantors.

49.     Upon information and belief, Defendant Corewell routinely refers fake balance billing debts to debt collectors, including Defendant DCM and United Collection Bureau, Inc., to demand money from patients, deceased patients' estates, and guarantors.

50.     The unlawful practice affects large numbers of patients, deceased patients' estates, and guarantors subjected to collection demands for amounts not legally owed, and many pay money to Defendants based on the belief that payment is legally required.

51.     As a result of Defendants' conduct, Plaintiff and class members have been misled regarding their legal obligations, exposed to collection pressures, and in many instances paid money to Defendants not legally owed.

## CLASS ACTION ALLEGATIONS

52.     Plaintiff brings this action under Rule 23 of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All emergency patients, deceased emergency patients' estates, or guarantors who, within the applicable limitations period, were billed or subjected to collection efforts by Defendants for amounts exceeding those permitted after payment by insurers, group health plans, Medicare, or Medicaid.

53.     The class is so numerous that joinder of all members is impracticable.

54.     Questions of law and fact common to the class regarding Defendants' routine unlawful conduct predominate over any questions affecting only individual members. A class action is superior to other available methods to adjudicate the controversy.

55.     Plaintiff's claims are typical of the claims of the class because they arise from the same routine practice.

56.     Plaintiff will fairly and adequately protect and represent the interests of the class. Plaintiff's interests are consistent with, and not antagonistic to, those of other class members. She seeks to represent a class of individuals harmed by the same conduct that harmed the Field Estate. Vindication of the Field Estate's claims will also be vindication of the other class members' claims.

57.     A class action is superior to individual litigation.

58.     Plaintiff has retained attorneys who will provide adequate representation. Plaintiff's attorneys are experienced in complex litigation and consumer issues.

9

## CLAIMS FOR RELIEF

### COUNT I – UNJUST ENRICHMENT

59. Plaintiff realleges and incorporates by reference each of the allegations above.

60. Defendants have unjustly received and retained money of Plaintiff class members through the assertion and collection of medical charges that were fake, invalid, and not legally owed.

61. The money taken belonged to Plaintiff class members.

62. Defendants' retention of the money is unjust and inequitable.

63. Defendants should not be permitted to retain money obtained through the assertion or collection of fake and invalid debts.

64. As a result of Defendants' unlawful conduct, Plaintiff class members have suffered damages, including the payment of money not owed and other financial harms.

### COUNT II – STATUTORY CONVERSION (MICH. COMP. LAWS § 600.2919a)

65. Plaintiff realleges and incorporates by reference each of the allegations above.

66. Defendants have wrongfully exerted dominion and control over money belonging to Plaintiff class members, and in denial of or inconsistent with their rights.

67. By collecting and taking money not legally owed, Defendants interfered with Plaintiff class members' rights to possess and control their own money.

68. Defendants converted the money for their own use.

69. Defendants' conduct of taking the money from Plaintiff class members was intentional and without lawful justification.

70. The funds obtained by Defendants were specific, identifiable monies derived from payments made in response to Defendants' billing and collection efforts.

71. Defendants took and converted the money to their own use.

10

72.     Defendants' retention of those funds constitutes conversion under applicable law.

73.     Plaintiff class members are entitled to return of the money and treble damages (three times the amount of money taken). Mich. Comp. Laws § 600.2919a.

74.     Plaintiff class members are entitled to attorney fees and costs. M.C.L. § 600.2919a.

## COUNT III – FRAUD IN THE INDUCEMENT

75.     Plaintiff realleges and incorporates by reference each of the allegations above.

76.     Defendants made material representations to Plaintiff class members that certain medical charges were due and owing to Defendant Corewell.

77.     The representations were false.

78.     When Defendants made the representations, Defendants knew they were false, or made them recklessly without knowledge of their truth and as positive assertions.

79.     Defendants made the representations with the intention that Plaintiff class members would act upon them.

80.     Plaintiff class members acted in reliance upon the representations by paying money to Defendants.

81.     As a result, Plaintiff class members suffered damages, including the payment of money not owed and other related financial harms.

## COUNT IV – FEDERAL DEBT COLLECTION PRACTICES ACT (FDCPA) (AGAINST DEFENDANT DCM)

82.     Plaintiff realleges and incorporates by reference each of the allegations above.

83.     Defendant DCM Services is a "debt collector" as defined by 15 U.S.C. § 1692a(6) of the Federal Debt Collection Practices Act (FDCPA).

84.     The FDCPA states that "a debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

11

85.     The alleged debts at issue are "consumer debts" within the meaning of 15 U.S.C. § 1692a(5), as they arise from transactions primarily for personal, family, or household purposes.

86.     Defendant DCM used interstate commerce and the mails in its business of collecting debts on behalf of others.

87.     Defendant DCM represented to Plaintiff class members that they owed certain amounts to Defendant Corewell Health, including in written communications identifying the billing balances reflecting the patients' debt.

88.     Those representations were false, deceptive, or misleading in violation of 15 U.S.C. § 1692e because they misstated the existence, amount, and legal status of Plaintiff class members alleged debts.

89.     Defendant DCM used unfair or unconscionable means to attempt to collect debts from Plaintiff class members in violation of 15 U.S.C. § 1692f by seeking to collect amounts not permitted by law.

90.     As a result of these violations, Plaintiff class members have suffered damages.

91.     Plaintiff class members are entitled to actual damages, and statutory damages up to $1,000 per person under 15 U.S.C. § 1692k(a)(2)(A).

92.     Plaintiff class members are also entitled to attorney's fees and costs. 15 U.S.C. § 1692k(a)(3).

## COUNT V – MICHIGAN FAIR DEBT COLLECTION PRACTICES ACT (MICH. COMP. LAWS §§ 339.901 et seq.)

93.     Plaintiff realleges and incorporates by reference each of the allegations above.

94.     Defendants are a "collection agency" as defined by Mich. Comp. Laws § 339.901 of the Michigan Fair Debt Collection Practices Act.

95.     Michigan law states that a collection agency "shall not commit one or more of the following acts: (a) communicating with a debtor in a misleading or deceptive manner …" or "(e)

12

making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt ….” M.C.L. §§ 339.915(a) and (e).

96. The alleged debts at issue, within the meaning of M.C.L. § 339.901(a), arise from transactions made primarily for personal, family, or household purposes.

97. Defendants represented to Plaintiff class members that they owed certain amounts to Defendant Corewell Health, including in written communications identifying the billing balances reflecting the patients' debts.

98. Those representations were false, deceptive, or misleading in violation of M.C.L. §§ 339.915(a) and (e) because they misstated the existence, amount, and legal status of Plaintiff class members' alleged debts.

99. No statute, regulation, or agency authorization permits Defendants to misrepresent the amount or legal status of medical debts or to collect amounts not legally recoverable.

100. Defendants used unfair or unconscionable means to attempt to collect debts from Plaintiff class members in violation of M.C.L. §§ 339.901 et seq. by seeking to collect amounts not permitted by law.

101. As a result of these violations, Plaintiff class members have suffered damages and are entitled to actual damages, statutory damages, declaratory and injunctive relief, attorney's fees and costs, and other relief. M.C.L. § 333.916(2).

**COUNT VI – MICHIGAN CONSUMER PROTECTION ACT (MICH. COMP. LAWS §§ 445.901 et seq.)**

102. Plaintiff realleges and incorporates by reference each of the allegations above.

103. The Michigan Consumer Protection Act ("MCPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." M.C.L. § 445.903(1).

Buchanan Firm

13

104.    Defendants, in the course of trade or commerce, represented to Plaintiff class members that certain balances remained legally due and owing after insurance payments, contractual adjustments, Medicare or Medicaid reimbursements, or other reimbursement limitations had already been applied.

105.    Defendants represented in billing statements, letters, collection notices, and related communications that Plaintiff class members owed specific amounts allegedly due to Defendant Corewell.

106.    Defendants represented that Plaintiff class members were legally obligated to pay those balances and that Defendants were entitled to collect them.

107.    Those representations were false, misleading, deceptive, or unfair because the balances sought exceeded amounts permitted or collectible under applicable reimbursement limitations, contractual arrangements, governing law, or applicable emergency-services billing protections.

108.    No statute, regulation, or agency authorization permits Defendants to misrepresent the amount or legal status of medical debts or to collect amounts not legally recoverable.

109.    Defendants failed to disclose material limitations on their legal ability to collect the alleged balances.

110.    Defendants' actions and communications have misled or deceived Plaintiff class members.

111.    As a result, Plaintiff class members have suffered damages and are entitled to actual damages, declaratory and injunctive relief, attorney's fees and costs, and other relief. M.C.L. § 445.911.

### COUNT VII – THIRD-PARTY BENEFICIARY BREACH

112.    Plaintiff realleges and incorporates by reference each of the allegations above.

14

113. Defendant Corewell participates in agreements with insurers or group health plans (e.g., payment contracts, managed care contracts) and participates in the Medicare and Medicaid reimbursement systems that establish fixed, reduced payment rates for medical services.

114. When Defendant Corewell submits claims for reimbursement, insurers, group health plans, or government payors issue payment at those negotiated or statutory rates and Defendant Corewell applies contractual adjustments to reduce standard charges.

115. These adjustments are not temporary reductions. They reflect binding limitations on what the provider may collect for the services rendered.

116. Once those payments and adjustments are applied, the patient's financial obligation is satisfied in full. See e.g., payment contracts, managed care contracts, Medicare (42 U.S.C. § 1395cc(a)(1)(A)), Medicaid (42 C.F.R. § 447.15, 42 C.F.R. § 438.106(b), 42 U.S.C. § 1396a(a)(25)(C), and 42 U.S.C. § 1396u-2(b)(6)), the federal No Surprises Act (45 C.F.R. 149.410 and 42 U.S.C. §§ 300gg-111), the Michigan No Surprise Billing Act (Mich. Comp. Laws §§ 333.24501 to 24517), the Patient Protection and Affordable Care Act (42 U.S.C. § 18001 et seq.), the federal Deficit Reduction Act of 2005 (42 U.S.C. § 1396u-2(b)(2)(D)), etc.

117. Plaintiff class members are intended beneficiaries of those agreements and protections, as they define and limit the amounts for which patients may be held financially responsible.

118. By seeking to collect amounts in excess of those permitted under such agreements and protections, Defendant breached them.

119. As a result of that breach, Plaintiff class members have suffered damages.

### COUNT VIII – CONCERT OF ACTION

120. Plaintiff realleges and incorporates by reference each of the allegations above.

121. Defendants, by concerted action, took money of Plaintiff class members by unlawful means.

122. Defendants acted jointly, toward a common purpose to get money from Plaintiff class members that was and is not owed.

123. As a result of Defendants' unlawful acts, Plaintiff class members have suffered damages.

124. Defendants are jointly and severally liable to Plaintiff class members for damages.

## COUNT IX – DECLARATORY AND INJUNCTIVE RELIEF

125. Plaintiff realleges and incorporates by reference each of the allegations above.

126. An actual controversy exists between the parties regarding whether Defendants may lawfully assert and collect the charges at issue.

127. Plaintiff contends that such charges are not legally owed and Defendants' billing and collection practices are unlawful.

128. Defendants contend, or have acted as though, such charges are valid and collectible.

129. A judicial declaration is necessary to determine the rights and obligations of the parties.

130. Plaintiff also seeks injunctive relief prohibiting Defendants from continuing to assert and collect amounts not legally owed.

131. Absent such relief, Plaintiff class members will continue to suffer harm.

## PRAYER FOR RELIEF

ACCORDINGLY, Plaintiff class members request this Court:

a. Certify the class;

b. Award restitution to Plaintiff class members and disgorgement of money Defendants have taken, including treble statutory damages (three times the amount of money taken). See e.g., M.C.L. § 600.2919a.

c.   Award statutory damages under the federal FDCPA and Michigan act;

d.   Enter appropriate declaratory and injunctive relief;

e.   Award attorney's fees and costs, S*ee e.g.,* 15 U.S.C. § 1692k(a)(3) and M.C.L. §§ 339.916(2), and

f.   Order other relief the Court deems just and equitable.

BUCHANAN FIRM
Attorneys for Plaintiff

Date:  May 22, 2026                    BY: _____
                                       Robert J. Buchanan (P42006)

BUSINESS ADDRESS & TELEPHONE NO.

452 Ada Dr. SE, Suite 300
Ada, MI 49301
(616) 458-2464

**JURY DEMAND**

A jury trial is demanded.

BUCHANAN FIRM
Attorneys for Plaintiff

Date:  May 22, 2026                    BY: _____
                                       Robert J. Buchanan (P42006)

BUSINESS ADDRESS & TELEPHONE NO.

452 Ada Dr. SE, Suite 300
Ada, MI 49301
(616) 458-2464

BUCHANAN FIRM